**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| HEIDI WICHTERICH AND CHRISTOPHER WICHTERICH<br><br>Plaintiffs,<br><br>v.<br><br>BIOTE CORP., BIOTE HOLDINGS, LLC, BIOTE MEDICAL, LLC, and GARY S. DONOVITZ, M.D.,<br><br>Defendants. | CIVIL ACTION NO. 25-cv-00475<br><br>JUDGE SUSIE MORGAN<br><br>MAGISTRATE JUDGE MICHAEL NORTH |

## BIOTE MEDICAL'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM AND THIS COURT'S ORDER

Defendant BioTE Medical, LLC ("BioTE Medical) respectfully submits its Response to

Plaintiffs' Supplemental Memorandum (ECF No. 101) and this Court's Order (ECF No. 100).

This action is one of many Plaintiffs' counsel has filed against BioTE Medical in States

across the country. In virtually all these actions, the plaintiffs have asserted that BioTE Medical

manufactures products and should be held liable for defects in those products.[1] Even here,

---

[1] Plaintiffs' counsel here has made product liability claims in numerous other lawsuits, including in California, Texas, Kentucky, New York, and West Virginia. *See, e.g.*, *Howell v. Dominguez, et al.*, No. 25CU054466C (Cal. Sup. Ct.—San Diego), filed Oct. 9, 2025 (California); *Oppenheim v. BioTE Corp., et al.*, No. 25-01-30 (Montgomery Cnty. Ct.), filed Jan. 2, 2025 (Texas); *Melloan v. Welch, et al.*, No. 24-CI-1526 (Warren Cnty. Ct.), filed Oct. 24, 2024 (Kentucky); *Rivera-Renna v. Infantino, et al.*, No. 623395/2023 (Suffolk County Sup. Ct.), filed Sept. 19, 2023 (New York); *Koontz v. Biote Corp.*, No. 2:24-cv-506 (S.D.W. Va), dism. Jan. 29, 2025; *Jeffries v. Biote Medical, LLC*, No. 21-C-776 (Cir. Ct. Kanawha Cnty.), filed Sept. 2, 2021 (West Virginia); *Adkins v. Biote Medical, LLC*, No. 21-C-975, (Cir. Ct. Kanawha Cnty.), filed Jan. 10, 2022) (West Virginia).

The Court may properly consider Plaintiffs' counsel's pleadings in other lawsuits because Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and [Fifth Circuit] precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)) (emphasis in original). Specifically, the Court may also judicially notice prior court documents to establish the fact of the previous litigation and the related filings. *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (citing *Taylor v.*

Plaintiffs initially pled product liability claims against BioTE Medical, abandoning those claims only in response to BioTE Medical's motion to dismiss. (*Compare* ECF No. 1, Ex. 1 *and* ECF No. 20 *with* ECF No. 58). Plaintiffs' position thus appears to be that BioTE Medical manufactures products only when it suits a plaintiff's litigation strategy or the alternative is dismissal.

A comparison of Plaintiffs' Amended Complaint ("AC") with their Second Amended Complaint ("SAC") is telling. (*Compare* ECF No. 20 *with* ECF No. 58). Despite removing the product liability count from the SAC, the factual allegations and factual theories of harm alleged in the SAC remain nearly identical. According to Plaintiffs, Mrs. Wichterich was harmed by the supraphysiologic levels of hormones as a result of the hormone pellets implanted in her.[2] (*Compare* ECF No. 20 at ¶¶ 375-465 *with* ECF No. 58 at ¶¶ 387-481).

Plaintiffs' allegations, statements, and filings show that this case falls squarely under the LPLA. The AC made that absolutely clear. (*See, e.g.*, ECF No. 20, Counts IV-V; *see also id.* at ¶¶ 596, 604-05). Indeed, only after BioTE demonstrated that the LPLA all but eliminated Plaintiffs' causes of action (*see, e.g.*, ECF No. 40) did Plaintiffs attempt to plead around the LPLA by changing the nature of their claims.  But even in the SAC, Plaintiffs aver that this lawsuit inexorably involves claims rooted in a product.  As described below, the SAC (1) describes BioTE Medical's purported manufacturing activities, (2) includes design defect allegations, and (3) details

---

*Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) ("A court may take judicial notice of a document filed in another court ... to establish the fact of such litigation and related filings") (internal quotations omitted)).

[2] At this juncture, Plaintiffs are bound by the allegations made in their Complaint, though it may consider Plaintiffs' prior inconsistent positions on product liability, which are reflected in various record filings. (*See* ECF Nos. 1-1, 20, 37).  *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) ("[W]hen reviewing [a 12(b)(6) motion], we assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff."); *see also Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) ("a district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, *items appearing in the record of the case*, and exhibits attached to the complaint whose authenticity is unquestioned") (emphasis added).  BioTE Medical may not (and does not) agree with Plaintiffs' allegations, but Plaintiffs are "the master of the complaint." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002).

claims premised on "product placement into commerce" and marketing. Any contrary contention by Plaintiffs is incorrect.[3]

## LAW AND ARGUMENT

Plaintiffs concede, as they must, that the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." (ECF No. 101 at 2 (quoting La. R.S. § 9:2800.52)). In the AC, they expressly plead facts that would establish BioTE Medical as an "apparent manufacturer," many of which remain in the SAC.

For background, a party need not be the "actual manufacturer" of a product to fall under the LPLA's exclusive remedy scheme. "Manufacturer also means: [a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." La. Rev. Stat. § 9:2800.53(1)(a); *see also Pellecer v. Werner Co.*, 421 So. 3d 919, 925 (La 2025) (discussing the "apparent manufacturer doctrine"). This "apparent manufacturer" rule applies here given the AC's repeated allegations that BioTE Medical was the "apparent manufacturer" of its pellets and other materials. (*See* ECF No. 20 at ¶¶ 109-112, 277, 296, 527-28, 531, 582-83, 596, 605, 623, and n.18).  Of these 15 allegations, the following remain in the SAC:

- Even so, BioTE suggested through its website and marketing efforts that it was, in fact, responsible for developing and manufacturing the pellets used in the Biote Method. (*Compare* ECF No. 20 at ¶ 109 *with* ECF No. 58 at ¶ 120).

- Until very recently, BioTE's website included several videos of Dr. Donovitz explaining the BioTE process, and at least one of those videos included descriptions of how "we" at BioTE manufacture pellets and further described BioTE's manufacturing facilities. BioTE continues to advertise that the BioTE Method is unique based in part on "Proprietary Hormone Pellets." See https://biote.com/clinician-training-certification (accessed June 26, 2024). (*Compare* ECF No. 20 at ¶ 120 n.18 *with* ECF No. 58 at ¶ 120 n.17).

---

[3] BioTE Medical noted in its Second Motion to Dismiss that it was right for Plaintiffs to remove their products liability claims because Plaintiffs' products claims, like all of their claims, are without merit. (*See* ECF Nos. 4, 31, and 60) (explaining why Plaintiffs' claims lack merit).

- For instance, in a video that appeared on BioTE's websites for years and was only recently removed, Donovitz delivers this message:

  > Hi. I'm Dr. Gary Donovitz for BioTeach. I often get asked, "what are pellets made of?". To start, *we* use soy. From soy, *we* develop the steroid ring from which *we* make testosterone and estradiol. That's in powder form. *We* check that powder for purity and potency. That powder then goes into a chamber where thousands of pounds of pressure are used to compress it into a small pellet, which is then sterilized and sent to you for administration to the patient. I'm Dr. Gary Donovitz for BioTeach. [*sic*] (*Compare* ECF No. 20 at ¶ 110 *with* ECF No. 58 at ¶ 121) (emphasis in original).

- During the aforementioned video, BioTE displays what appears to be a laboratory, clearly suggesting that BioTE itself is responsible for the development and manufacture of the pellets used in the Biote Method. A screen shot of the video displaying this laboratory is depicted below:



  (*Compare* ECF No. 20 at ¶ 111 *with* ECF No. 58 at ¶ 122).

- Donovitz repeated this misrepresentation to the National Academies of Sciences, Engineering, and Medicine during a November 12, 2019, presentation in which he explained that "our pellets, when we're making those pellets, are within three percent when we look at the potency of the pellet . . . And that's intentional so that when we dose what we dose and we write a certain prescription, we get what we ask for. . . ." (*Compare* ECF No. 20 at ¶ 112 *with* ECF No. 58 at ¶ 123).

- Despite BioTE's integral role in marketing, selling, and distributing testosterone pellets for use in the Biote Method throughout the country, BioTE has not registered with the FDA. (*Compare* ECF No. 20 at ¶ 277 *with* ECF No. 58 at ¶ 288).

- BioTE is a distributor or "third-party logistics provider" as defined by Section 581(22) of the Drug Supply Chain Security Act, 21 U.S.C. § 351, *et seq.* (*Compare* ECF No. 20 at ¶ 296 *with* ECF No. 58 at ¶ 307).

Considering the foregoing—and leaving aside whether any of Plaintiffs' claims are in fact true—the SAC plainly asserts that BioTE Medical is the apparent manufacturer of the pellets and the BioTE Method that caused the alleged harm to Mrs. Wichterich. Plaintiffs' removal of their *legal conclusions* that (1) "BioTE Fraudulently Represents Its Role in the Manufacturing Process of the Pellets" (ECF No. 20 at ¶¶ 526-32) and (2) "BioTE Misrepresents its Role in the Manufacturing of the Pellets" (*Id.* at ¶¶ 581-86) does not change the substance of Plaintiffs' factual allegations, which establish that BioTE Medical is an apparent manufacturer under the LPLA. Plaintiffs' self-serving contention that the SAC's claims are based on "BioTE's service-based conduct," (ECF No. 101 at 8), is thus inconsistent with the allegations in the SAC, which repeatedly assert that BioTE Medical's engaged in manufacture, design, distribution, and sale activities that allegedly gave the buying public a basis to assume that BioTE Medical's is the manufacturer of the pellets.[4] Therefore, pursuant to the allegations of the SAC, the LPLA applies.

Next, Plaintiffs contend that Mrs. Wichterich was allegedly harmed by prolonged exposure to supraphysiologic hormone levels. Given that the purported "goal" of the BioTE Method is to "create lifelong customers who regularly experience supraphysiologic levels of testosterone and

---

[4] Plaintiffs also misunderstand the professional and nonprofessional service provider exception of the LPLA. Such service providers "are exempt so long as the essence of the relationship between the professional and nonprofessional, as the case may be, and the customer is a service – the furnishing of judgement and skill . . . ." John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 579 (1989). Although the case law has not extensively interpreted what constitutes a "professional service" under the LPLA's exclusion, Louisiana law, generally, defines "professional service" as "services performed by one in the ordinary course of the practice of [one's] profession, on behalf of another." *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 287 (5th Cir. 2006) (citations omitted). The parallel exclusion of nonprofessional service providers suggests the legislature intended to exempt service providers generally when their primary function involves rendering judgment or skill rather than manufacturing products. Based upon Plaintiffs' allegations, BioTE Medical is not a service provider offering judgment or skill but a company providing "hormone replacement therapy" (ECF No. 58 at ¶ 500) and "individualized and personalized doses of hormone therapy" (*Id.* at ¶ 540). In fact, the words "judgment" and "skill" are not used in the SAC once.

estrogen," (*see, e.g.,* ECF No. 58 at ¶ 275), that "goal" could not be achieved without the hormone pellets. In fact, pursuant to Plaintiffs' own allegations, "patients maintain hormone levels at supraphysiologic levels through repeated and continuous pellet implantations." (*Id.* at ¶ 271).[5] Per Plaintiffs' own allegations, there are no supraphysiological levels of hormones without the pellets, and thus no apparent harm to any patient (including Mrs. Wichterich). To support this theory, Plaintiffs fill their SAC with "design defect" allegations which assert that BioTE's pellet-based program was defectively designed to achieve hormone imbalance:

- The Defendants' goal to create lifelong customers who regularly experience supraphysiologic levels of testosterone and estrogen renders the BioTE Method ***defective and unsafe*** for patients. (*Id.* at ¶ 275) (emphasis added).

- As a result, tens of thousands of patients have been provided with entirely unnecessary and dangerous "hormone replacement" therapy through the surgical implantation of hormone therapy pellets ***designed to achieve*** supraphysiologic levels of testosterone and estrogen in patients. (*Id.* at ¶ 500) (emphasis added).

- Defendants also purport that the BioTE Method of HRT provides individualized and personalized doses of hormone therapy that are unique to each individual patient and ***designed to "optimize"*** that individual patient's hormone levels. (*Id.* at ¶ 540) (emphasis added).

- BioTE and Donovitz breached their duty of care in numerous ways, which include, but are not limited to, the following:

  a. In the ***negligent design*** . . . of the BioTE Method of HRT.

  b. In the ***negligent design*** . . . of the Proprietary Dosing Algorithm. (*Id.* at ¶ 561) (emphasis added).

- Defendants claim that the BioTE Method of HRT is supported by extensive scientific and clinical research and that the BioTE Method of HRT ***is designed***

---

[5] *See also* ECF No. 58 at ¶ 245 ("the Biote Method permits male patients to maintain supraphysiologic levels of testosterone indefinitely by authorizing ongoing testosterone therapy even in the face of testosterone values above 1200 ng/dL"); ¶ 394 ("For each cohort of the population, BioTE's proposed solution is a given: "hormone optimization" via supraphysiologic doses of implanted testosterone or estradiol pellets."); ¶ 500 ("tens of thousands of patients have been provided with entirely unnecessary and dangerous 'hormone replacement' therapy through the surgical implantation of hormone therapy pellets designed to achieve supraphysiologic levels of testosterone and estrogen in patients.").

*to correct* hormonal imbalances in men and women by returning their hormones to normal levels. (*Id.* at ¶ 599) (emphasis added).

- BioTE had a duty to disclose information about what the BioTE Method of HRT was *designed to accomplish* and to make potential pellet recipients aware of the potential risks and side effects of the BioTE Method of HRT. (*Id.* at ¶ 611) (emphasis added).

Thus, based on Plaintiffs' allegations, the design defect is the insertion of the pellets, the pellets themselves, or the "Method" itself, which led to supraphysiological levels of hormones and caused Mrs. Wichterich's alleged harms.

Furthermore, the SAC is riddled with allegations that their claims are premised on "product placement into commerce" and marketing. For example, Plaintiffs allege that the BioTE Method includes "inventory management software to ensure sufficient supplies to institute the BioTE Method." (ECF No. 58 at ¶ 88).  In fact, Section D of the SAC is titled "BioTE Marketing of 'Hormone Optimization' and 'Individualized Care.'" (*Id.* at ¶¶ 185-281). This entire section of the SAC details the alleged efforts BioTE Medical engages in to market and place the BioTE Method into commerce, such as:

- BioTE has been . . . marketing its system of HRT for more than a decade . . . . (*Id.* at ¶ 183).

- From its inception, BioTE has maintained relationships with third-party manufacturers to prepare and provide the hormone-containing pellets to BioTE-certified providers throughout the country. (*Id.* at ¶ 253).

- BioTE announced that its acquisition of Asteria strengthened BioTE's "control over its supply chain," would enhance efficiency, and "enable[e] the vertical integration of [BioTE's] manufacturing and provid[e] direct control over [BioTE's] pharmacokinetic research efforts." (*Id.* at ¶ 264).

And, beyond the detailed allegations of marketing and product placement in Section D, the SAC includes the following assertions:

- BioTE suggested through its . . . marketing efforts that it was, in fact, responsible for developing and manufacturing the pellets used in the Biote Method. (*Id.* at ¶ 120).

- BioTE nevertheless includes substantial sums in its financial statements for "inventory" from the date that pellets are shipped from the manufacturers to the providers until the pellets are implanted in a patient. (*Id.* at ¶ 125).

- BioTE offers . . . marketing support. (*Id.* at ¶ 136).

- BioTE maintains a team of sales staff employees who are responsible for training BioTE's Certified providers in BioTE's business protocols as they pertain to marketing . . . . (*Id.* at ¶ 140).

- BioTE provides its Certified Providers with various in-office marketing materials that promote the purported benefits of the Biote Method of HRT. (*Id.* at ¶ 144).

- *Despite BioTE's integral role in marketing*, selling, and distributing testosterone pellets for use in the Biote Method throughout the country, BioTE has not registered with the FDA. (*Id.* at ¶ 288) (emphasis added).

- The Defendants' predatory and dishonest marketing practices are outrageous . . . . (*Id.* at ¶ 366).

In sum, based solely on Plaintiffs' allegations in the SAC, their claims are entirely premised on "manufacturing activity, product design, and product placement into commerce." No assertion in Plaintiffs' Supplemental Brief can change the allegations in the SAC that clearly show that Plaintiffs allege that the BioTE Method, due to the allegations that the method required pellet insertions that resulted in prolonged exposure to supraphysiologic hormone levels, caused Mrs. Wichterich's alleged injuries by virtue of a defect in its manufacture, design, or performance.

## CONCLUSION

Because the SAC seeks to recover from BioTE Medical as a manufacturer for damage caused by a product, Plaintiffs have pled LPLA claims, such that the LPLA precludes all Plaintiffs' claims in the SAC. Moreover, even if the LPLA does not preclude Plaintiffs' claims, all claims

must be dismissed for the reasons stated in BioTE Medical's Second Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 60).[6]

Dated: January 20, 2026

Respectfully submitted,

**IRWIN FRITCHIE URQUHART MOORE & DANIELS LLC**

/s/ Gabrielle C. Broders
Matthew W. Bailey (21459)
450 Laurel Street, Suite 1150
Baton Rouge, Louisiana 70801
Telephone: (225) 615-7150
Facsimile: (225) 615 – 7179
mbailey@irwinllc.com

Gabrielle C. Broders (39821)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
gbroders@irwinllc.com

**SHOOK, HARDY & BACON L.L.P.**
Kurt D. Weaver *(admitted pro hac vice)*
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Tel:  (312) 704-7700
Fax: (312) 558-1195
kweaver@shb.com

*Attorneys for Defendant BioTE Medical, LLC*

---

[6] "Motions to amend are 'entrusted to the sound discretion of the district court,' and a court may properly refuse to grant leave to amend if the plaintiff failed to cure a defect after being given earlier opportunity to do so." *Reddick v. Medtronic, Inc.,* No. CV 18-8568, 2021 WL 798294, at *14 (E.D. La. Mar. 2, 2021), *aff'd,* No. 21-30169, 2022 WL 715494 (5th Cir. Mar. 9, 2022) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998) and citing Arthur R. Miller *et al., When Leave to Amend May Be Denied*, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.); *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (denying a third leave to amend because plaintiff failed to "remedy the most basic deficiencies in his earlier complaints"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) (denying leave to amend after plaintiff subsequently failed to add the requisite particularity in its claims the first two times)). In this case, the original petition was filed in state court in December of 2024, over a year ago, and Plaintiffs have already been given two chances to amend their complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF parties of interest.

*/s/ Gabrielle C. Broders*